IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES JAMES SHAFFER,<br>CHARLES J. SHAFFER, JR. and<br>RHONDA KEMPER | )<br>)<br>) |
| Plaintiffs, | ) Case No. 16-CR-497-MJR-SCW |
| vs. | ) |
| DEUTSCHE BANK AG, | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**REAGAN, Chief Judge:**

Plaintiffs Charles James Shaffer, Charles J. Shaffer, Jr., and Rhonda Kemper filed suit against Defendant Deutsche Bank AG alleging that Deutsche Bank conspired with Iranian financial institutions to transfer U.S. currency to Iranian banks in violation of U.S. economic sanctions, giving the Iranian government access to currency necessary to fund terrorist activities in Iraq. By doing so, Plaintiffs assert that Deutsche Bank engaged in a conspiracy to provide material support for international terrorism and to a foreign terrorist organization in violation of the Anti-Terrorism Act (ATA), specifically 18 U.S.C. §§ 2333(a), 2339A, and 2339B. Charles James Shaffer, David Schaefer (son of Rhonda Kemper), and other United States citizens were severely injured and killed as a result of terrorist attacks in Iraq orchestrated by groups like those funded by Iran.

Deutsche Bank filed a motion to dismiss (Doc. 35), arguing, among other things, that the complaint fails to state a claim because it does not plausibly plead proximate cause. Plaintiffs filed a response in opposition (Doc. 44) to which Deutsche Bank replied

1

(Doc. 49). The parties also submitted several briefs and responses addressing supplemental authority that arose after the completion of briefing on the motion to dismiss.[1]

As a preliminary note, Defendant cites Federal Rule of Civil Procedure 12(b)(1) in passing in its motion to dismiss. Rule 12(b)(1) applies to motions for lack of subject matter jurisdiction, but Defendant raises no subject matter jurisdiction argument. Federal courts enjoy exclusive subject matter jurisdiction under 18 U.S.C. § 2333(a). To the extent that Defendant is arguing otherwise, the argument is undeveloped. Defendant also raise an alleged lack of personal jurisdiction in a single-paragraph footnote, presumably also seeking to bring its motion to dismiss under Rule 12(b)(2). This argument is undeveloped, but it is worth note that courts have found personal jurisdiction exists in Anti-Terrorism Act claims against foreign banks that engage in correspondent banking in the United States, as Deutsche Bank does. *See, e.g., Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, **732 F.3d 161, 172 (2d. Cir. 2013).** The remainder of Defendant's arguments fall within the reach of Rule 12(b)(6). For the reasons delineated below, the Rule 12(b)(6) motion to dismiss is **GRANTED**.

I. <u>Factual Allegations</u>

Charles James Shaffer and David Schaefer were members of the United States

---

[1] Following the passage of the Justice Against Sponsors of Terrorism Act (JASTA) in 2016, the parties briefed whether the Act affected Plaintiffs' claims. (Docs. 51, 53). JASTA added conspiracy liability for parties who conspire with a Foreign Terrorist Organization (FTO). 18 U.S.C. § 2333(d). Plaintiffs' claims, however, allege a conspiracy with Iran, a State Sponsor of Terrorism (SST), not with an FTO, so this provision of JASTA does not apply to this action. If Congress intended to include similar liability for conspiracy with an SST, it would have included a provision in the amendment doing so.

military and served in Iraq as part of the U.S. peacekeeping mission. While on routine patrol in Mosul in 2008, Shaffer's vehicle was struck by a type of improvised explosive device (IED) known as an explosively-formed penetrator (EFP). Plaintiffs allege that EFPs like the one used in the attack were Iranian-made and were provided to Iranian-funded and trained terror operatives in Iraq. Shaffer was seriously injured in the attack. In May 2009, David Schaefer, son of Plaintiff Rhonda Kemper, was killed in Iraq, also by the explosion of an Iranian-manufactured EFP that allegedly was provided to Iranian-funded and trained terror operatives in Iraq.

Plaintiffs claim that terrorists and terrorist organizations like Hezbollah, the Islamic Revolutionary Guard Corps. (IRGC), the Islamic Revolutionary Guard Corps-Qod Force (IRGC-QF), and other Iranian terrorist agents killed and injured Coalition Forces, including Shaffer and Schaefer, and civilians in Iraq. Plaintiffs do not specify which group, if any, orchestrated the attacks that injured Shaffer and killed Schaefer, instead noting that Iranian funding was behind groups like the groups that orchestrated the types of attacks at issue.

The EFPs deployed in Iraq by IRGC and Hezbollah were professionally manufactured and designed to target the armor used by U.S. and Coalition Forces. Plaintiffs' complaint documents the long history of financial support by Iran for terrorism throughout the Middle East and worldwide, culminating in Iran's designation as a State Sponsor of Terrorism (SST). Hezbollah, a Foreign Terrorist Organization (FTO), has deep ties to Iran, who uses the organization to "project extremist violence and terror throughout the Middle East and around the globe." (Doc. 1, ¶ 50). Iran funds

3

and equips Hezbollah with weapons through the IRGC and the IRGC-QF, and the IRGC has also attempted to bolster Iran's goals through political and ideological support, bolstered by investments in local television and radio stations.

In order to coordinate and fund its activities in Iraq, Iran needed substantial amounts of U.S. currency but could not easily access it due to economic sanctions put in place the United States government. To gather the necessary access to U.S. currency, Iran relied on what Plaintiffs describe as the "illicit assistance" of Western financial institutions, including Defendant Deutsche Bank. Deutsche Bank allegedly assisted Iran in "laundering" U.S. dollars and with access to financing in U.S. currency that it ordinarily would not have had, all while Iran's activities in Iraq were heavily reported and well-known.

There was a U-Turn exemption program in place that allowed Iranian parties indirect access to U.S. dollar transactions under limited and closely-monitored circumstances. Deutsche Bank processed financial transactions for Iranian banks outside the structure of the U-Turn exemption program, instead removing important information and data from transactions that it processed for Iranian banks, allegedly to defeat detection and the freezing of the assets at issue by the United States. By doing so, Plaintiffs allege that Deutsche Bank conspired with Iranian banks, and therefore with Iran, to evade U.S. sanctions and to disguise financial payments, all of which enabled Iran's involvement in the terrorist acts that injured Plaintiffs.

In 2015, Deutsche Bank entered into a consent order with the New York Department of Financial Services related to the transactions it processed for Iranian and

4

other foreign financial institutions. The consent order noted that the practices of deleting and altering information were widespread but that Deutsche Bank instituted policies beginning in 2006 to end the practices and to wind-down business with U.S.-sanctioned entities. Even after the policies were enacted, some prohibited transactions persisted. As a result of the consent order, Deutsche Bank was fined $200 million.

## II. **Legal Standard**

A complaint must include enough factual content to give the opposing party notice of what the claim is and the grounds upon which it rests. ***Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)**, **and** *Ashcroft v. Iqbal*, **556 U.S. 662, 698 (2009)**. To satisfy the notice-pleading standard of Rule 8, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" in a manner that provides the defendant with "fair notice" of the claim and its basis. ***Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing** *Twombly*, **550 U.S. at 555 and quoting Fed. R. Civ. P. 8(a)(2)).** In ruling on a motion to dismiss for failure to state a claim, a court must "examine whether the allegations in the complaint state a 'plausible' claim for relief." *Arnett v. Webster*, **658 F.3d 742, 751 (7th Cir. 2011) (citing** *Iqbal*, **556 U.S. at 677-78).**

## III. **Analysis**

The Anti-Terrorism Act, in 18 U.S.C. § 2333(a), provides that "[a]ny national of the United States injured in his or her person . . . by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold . . . damages." Plaintiffs

bring claims under 18 U.S.C. § 2339A and § 2339B, which address providing material support to terrorism. Section 2339A prohibits providing material support or resources, or concealing or disguising the nature of material support or resources, while knowing or intending that they are to be used in preparation for, or in carrying out, international terrorism. Section 2339B prohibits providing material support or resources to a foreign terrorist organization. Courts, in determining civil liability under the ATA, require proof of three elements: (1) an injury to a U.S. national, (2) an act of international terrorism, and (3) causation. The Seventh Circuit has held that proving some degree of intent is necessary, as well, but that establishing recklessness may be sufficient to pursue a claim. ***Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685, 692-93 (7th Cir. 2008)(en banc)("*Boim III*")**. This case hinges on whether Plaintiffs' plausibly pleaded causation.

In a fact pattern strikingly similar to Plaintiffs' complaint, the Second Circuit determined that a financial institution, UBS AG, was not liable under the ATA for providing U.S. currency to Iran in violation of economic sanctions. In *Rothstein v. UBS AG*, 708 F.3d 82 (2nd Cir. 2013), the plaintiffs were United States citizens who alleged they were injured in terrorist attacks in Israel. UBS AG was prohibited from engaging in financial transactions with any state sponsors of terrorism, yet allegedly engaged in "forbidden U.S. currency transactions with Iran," a state sponsor of terrorism. *Rothstein*, **708 F.3d at 87**. The plaintiffs alleged that they were injured in attacks by Hamas and Hezbollah and that the terrorist organizations were able to purchase weapons and supplies, to pay to train operatives, and to carry out the attacks in large

6

part due to financial support from Iran. Iran, however, was subject to sanctions by the United States that made it difficult to obtain the U.S. dollars necessary for funding the Hamas and Hezbollah operations. UBS allegedly aided Iran by providing access to millions of dollars in U.S. currency.

The Second Circuit focused on the importance of a plaintiff establishing proximate cause in an action under this fact pattern and warned that the "plaintiffs' contention that proximate cause is established because they were injured after UBS violated federal law is a *post hoc, ergo propter hoc* proposition that would mean that any provider of U.S. currency to a state sponsor of terrorism would be strictly liable for injuries subsequently caused by a terrorist organization associated with that state." *Id.* **at 96.** The Second Circuit did not believe Congress intended to impose strict liability when drafting the ATA and found the plaintiffs' claims were properly dismissed for failing to plausibly plead proximate cause.

It is difficult to separate Plaintiffs' claims from this clear statement warning of the importance of separating illegal processing of financial transactions from civil liability for terrorist attacks. Unlike Plaintiffs' conspiracy claims, however, the claims in *Rothstein* were brought under a theory of aiding and abetting liability, and the Second Circuit found that § 2333(a) does not allow for recovery on such a theory. The Seventh Circuit agreed in *Boim III*, in which the Court analyzed a chain of statutory incorporations by reference to conclude that financial support to a terrorist group outside of the United States may violate § 2333. **549 F. 3d at 689-90**. The defendants in *Boim III* donated money to Hamas, and the Court found that giving money to a terrorist

organization is not intentional misconduct under the ATA, unless "one either knows that the organization engages in such acts or is deliberately indifferent to whether it does or not," equating the intent necessary for civil liability to recklessness and wantonness. *Id.* at 693. Important to the determination is whether an "actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead." *Id.* at 693.

While the ATA does not provide for secondary aiding and abetting liability, conspiracy principles can inform the determination of whether a defendant is liable under a theory of primary liability. **Boim III, 549 F.3d at 691**. *Boim III*, like *Rothstein*, focused on proximate cause, specifically the foreseeability of the donated money being put towards terrorist acts and the evidence as to whether the donor knows of the character of the organization to which money is given. *Id.* at 694-96. To the Seventh Circuit, the rule for donating to a terrorist organization was clear: "[a]nyone who knowingly contributes to the nonviolent wing of an organization that he knows to engage in terrorism is knowingly contributing to the organization's terrorist activities." *Id.* at 698. This rule, however, was not without its limits, particularly in situations where a donor's money was laundered through intermediate organizations before reaching a terrorist organization. The longer the chain between a donor and a donee's connection to terrorism, the less likely it is that there is liability under the ATA. *Id.* at 701-02.

*Rothstein* and *Boim III* address money flowing into an organization that aids terrorist organizations differently, though that is explained by the different

8

circumstances of the defendants in each case. The Second Circuit, in discussing the actions of a financial institution, noted that "Iran is a government, and as such it has many legitimate agencies, operations, and programs to fund" and that there were no allegations that without the money from UBS "Iran would have been unable to fund the attacks by Hezbollah and Hamas." The Seventh Circuit, however, warned that the ATA does not require proof that a donor intended a contribution be used for terrorism and that if you give money to a terrorist organization, even if you earmark it for nonterrorist activities, you may still be liable under the ATA because money is fungible and more money for one type of activity frees up other money for other causes.

Plaintiffs attempt to plead around *Rothstein* by seizing on language in *Boim III* that opens the possibility for civil conspiracy liability under the ATA. The problem for Plaintiffs is that *Boim III* contemplates a co-conspirator who donates money to terrorist organizations, warning that distant links between donor and donee negate liability. Here, the temporal chain between Deutsche Bank and the attacks on Shaffer and Schaefer is lengthy, far greater than the chain in *Boim III*, and Deutsche Bank is not a donor to any organization. Accepting the allegations in the complaint as true, Deutsche Bank illegally stripped essential information from financial transactions involving Iranian financial institutions in order to assist the financial institutions in evading U.S. sanctions and oversight. The transactions helped Iran's government access U.S. currency, which Iran then used in part to manufacture EFPs and to fund terrorist organizations, like Hezbollah and the IRGC. Because of this access to currency, Iran could move money and weapons to terrorist groups in Iraq like the groups that could

9

have been involved in the attacks that injured Shaffer and killed Schaefer. The complaint does not allege which group, if any, actually planned or orchestrated the attacks, however, and the degree of separation between Deutsche Bank and the attacks cuts against liability.

In addition to the distance between the actions of Deutsche Bank and the terrorists responsible for attacks on Shaffer and Schaefer, the complaint does not establish that Deutsche Bank participated in any conspiracy other than perhaps to evade economic sanctions. In criminal law, a conspiracy exists if the "co-conspirators joined to effectuate a common design or purpose." *United States v. Ceballos*, 302 F.3d 679, 688 (7th Cir. 2002). A participant need not know all his co-conspirators or participate in every aspect of a scheme, but a single objective must be embraced by the participants. *See United States v. Green*, 648 F.3d 569, 579 (7th Cir. 2011). Here, the conspiracy allegations largely focus on a conspiracy to avoid U.S. economic sanctions to assist Iranian banks in securing U.S. currency. Plaintiffs add a conclusory allegation that it was foreseeable to the conspirators, including Deutsche Bank, that helping Iranian banks secure the currency would enable Iran to fund terrorism. But Plaintiffs, by their own allegations, describe the object of the conspiracy as completing the dollar-clearing transactions. (Doc. 1, ¶¶ 1, 141). For a claim to be viable under the ATA, the object of the participants' conspiracy must be to provide material support for terrorism, and Plaintiffs have not plausibly pleaded that Deutsche Bank intended to do so.

When looked at as a whole, Plaintiffs complaint does not adequately plead that the actions by Deutsche Bank rise to the level of conspiring to provide material support

10

to terrorism or that the actions by Deutsche Bank proximately caused Plaintiffs' injuries. Processing funds for Iranian financial institutions, even if done to evade U.S. sanctions, is not the same as processing funds for a terrorist organization, and a conclusory allegation that it was foreseeable that Iran might give some of the money to terrorist organizations if the transactions succeeded is insufficient to establish liability. Plaintiffs have not plausibly pleaded that Deutsche Bank conspired to provide financial services or assistance to terrorist organizations or to the perpetrators of the attacks on Shaffer and Schaefer.

The claims against Deutsche Bank fall closer to the Seventh Circuit's discussion of a lengthened temporal chain that diminishes an actor's likelihood of knowing that their actions were connected to terrorism and to the Second Circuit's clear statement against using a violation of federal law as a premise for civil liability for a provider of U.S. currency to a state sponsor of terrorism. Plaintiffs attempt to get around these issues by pleading conspiracy, but the object of the pleaded conspiracy is not an ATA violation. To allow Plaintiffs' theory of liability would lead to Deutsche Bank potentially being liable for any Iran-related terrorist act during or after the period during which they were processing transactions for Iranian banks, and that is too broad a reading of ATA civil liability. As Section 2333 does not impose liability for injuries to victims of terrorist attacks on providers of U.S. currency to state sponsors of terrorism, Plaintiffs' claims must be dismissed.

### IV. Conclusion

For the above-state reasons, Defendant Deutsche Bank's Rule 12(b)(6) motion to dismiss is **GRANTED**. Plaintiffs' claims are **DISMISSED with prejudice** for failure to state a claim.

**IT IS SO ORDERED**.

DATED: December 7, 2017

*s/ Michael J. Reagan*
MICHAEL J. REAGAN
**Chief Judge**
**United States District Court**